UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

CASE NO. 14-60528-CIV-COHN/SELTZER

TRANSATLANTIC LINES LLC,

    Plaintiff,

v.

PORTUS STEVEDORING LLC,

    Defendant,

v.

MOBRO MARINE INC. and MCALLISTER
TOWING AND TRANSPORTATION CO. INC.,

    Third-Party Defendants.
_____/

## ORDER GRANTING MCALLISTER'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Third-Party Defendant McAllister Towing and Transportation Co. Inc.'s Motion for Final Summary Judgment [DE 50] ("Motion"). The Court has reviewed the Motion and the record in this case, and is otherwise advised in the premises. For the reasons discussed herein, the Court will grant summary judgment for McAllister on Portus's claim against it for contribution.

### I.   BACKGROUND

Plaintiff Transatlantic Lines LLC ("Transatlantic") operates a cargo-transport service between Jacksonville, Florida, and Guantanamo Bay, Cuba. DE 1 (Complaint) ¶ 3. In early 2013, Transatlantic chartered the barge "Atlantic Trader" from Third-Party Defendant McAllister Towing and Transportation Co. Inc. ("McAllister") for use in its business. Id. ¶ 8; DE 30 (Amended Third Party Complaint) ¶ 5. This arrangement was

governed by a written charter agreement between Transatlantic and McAllister. See DE 50-4 at 72–85 ("Charter").

On or about March 2, 2013, having accepted delivery of the Atlantic Trader (see DE 50-1 at 6, 14), Transatlantic hired Defendant Portus Stevedoring LLC ("Portus") to load and secure cargo on the barge for shipment to Cuba. Compl. ¶ 6. Third-Party Defendant Mobro Marine Inc. ("Mobro") assisted in this effort by modifying and repairing the Atlantic Trader, including parts of the barge's cargo-securing system. Am. 3d Pty. Compl. ¶ 4.

Thereafter, the Atlantic Trader departed for Cuba. By March 4, 2013, the barge had made its way from Jacksonville to waters off the coast of South Florida. Compl. ¶ 9. At this point in the voyage, the Atlantic Trader's cargo-securing system failed, and over 30 cargo containers were damaged or lost overboard as a result. Id. In its Complaint, Transatlantic alleges that Portus's carelessness in loading and securing the cargo containers caused the cargo-securing system to fail. On this basis, Transatlantic has asserted three claims against Portus: (1) breach of contract; (2) breach of the implied warranty of workmanlike performance; and (3) negligence. Id. ¶¶ 14–27.

Portus has answered Transatlantic's Complaint and has raised a number of affirmative defenses. See DE 6. Portus also has filed third-party claims against Mobro and McAllister for contribution under Rule 14(c) of the Federal Rules of Civil Procedure. See generally Am. 3d Pty. Compl. Portus alleges that Mobro is liable for any harms Transatlantic suffered because Mobro did poor work in modifying and repairing the Atlantic Trader. Id. ¶¶ 10–13. Portus also alleges that McAllister bears liability for its failure to deliver the Atlantic Trader to Transatlantic in acceptable condition. Id. ¶¶ 14–

2

18. Now before the Court is McAllister's Motion, in which McAllister seeks summary judgment in its favor on Portus's claim against it for contribution.

## II. LEGAL STANDARD

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that "there is an absence of evidence to support the nonmoving party's case." Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Therefore, the non-moving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576–77 (11th Cir. 1990). In deciding a summary-judgment motion, the Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006).

## III. DISCUSSION

In the Motion, McAllister seeks summary judgment on Portus's sole claim against it for contribution. McAllister argues that it cannot be found liable for any of Transatlantic's harms arising from the condition of the Atlantic Trader, because Transatlantic waived the implied warranty of seaworthiness and accepted the Atlantic Trader "as is." The Court agrees with McAllister, and will grant the Motion.

In its Amended Third-Party Complaint, Portus alleges that McAllister is liable for Transatlantic's harms relating to the failure of the cargo-securing system on the Atlantic Trader because McAllister furnished the barge to Transatlantic in a condition unfit for use. Am. 3d Pty. Compl. ¶¶ 14–17. In their papers, the parties agree that Portus rests its contribution claim against McAllister upon a duty to provide a barge that was fit for service. See DE 50 at 13–14; DE 54 at 7, 11. This duty of a ship owner to provide a charterer with a ship fit for service is referred to as the warranty of seaworthiness. E.g., Aguirre v. Citizens Cas. Co. of N.Y., 441 F.2d 141, 143–44 (5th Cir. 1971)[1]; Martinez v. Sea Land Serv., Inc., 763 F.2d 26, 27–28 (1st Cir. 1985).

When the owner of a ship offers the vessel for charter, the charter by its nature carries an implied warranty of seaworthiness. Work v. Leathers, 97 U.S. 379, 380 (1878); Thomas Jordan, Inc. v. Mayronne Drilling Mud, Chem. & Eng'g Serv., 214 F.2d 410, 412 (5th Cir. 1954). The parties devote much of their papers to the interplay between the nature of the Charter in this case—which McAllister contends is a "bareboat" charter (see DE 50 at 15–19)—and the warranty of seaworthiness. See id.

---

[1] Decisions of the former Fifth Circuit issued before October 1, 1981, are binding precedent in the Eleventh Circuit. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

4

at 15–19; DE 54 at 9–11. However, the categorization of a charter as a bareboat charter or otherwise bears primarily upon a ship owner's potential liability to third parties during the charter. See Lovette v. Happy Hooker II, No. 04-522, 2006 WL 66722 at *3 (M.D. Fla. Jan. 11, 2006); 2 Thomas J. Schoenbaum, Admiralty & Mar. Law § 11-3 (Westlaw 5th ed. 2014).

In contrast, this case as it relates to McAllister involves the question of a ship owner's liability directly to the charterer. The owner-charterer relationship is contractual. See, e.g., Zidell, Inc. v. Cargo, Freight & Subfreight of Barge ZPC 404, 661 F. Supp. 960, 962–64 (W.D. Wash. 1987); Neubros Corp. v. Nw. Nat'l Ins. Co., 359 F. Supp. 310, 318–20 (E.D.N.Y. 1972); Hercules Powder Co. v. Commercial Transp. Corp., 270 F. Supp. 676, 679–82 (N.D. Ill. 1967). As noted above, an owner's warranty of seaworthiness to the charterer is implied in every charter of a ship. See Work, 97 U.S. at 380. However, as is true of most implied warranties, the warranty of seaworthiness may be waived by clear language to that effect. E.g., Cullen Fuel Co. v. W.E. Hedger, Inc., 290 U.S. 82, 88 (1933); Thomas Jordan, Inc., 214 F.2d at 412; Zidell, Inc., 661 F. Supp. at 962–63.

The Charter between Transatlantic and McAllister contains an unambiguous waiver of implied warranties. The Charter provides at part II, section 3, pertaining to delivery of the Atlantic Trader:

> (c) Delivery by [McAllister] of the [Atlantic Trader] and acceptance of the [Atlantic Trader] by [Transatlantic] shall constitute a full performance by [McAllister] of all of [McAllister's] obligations under this Clause 3, and thereafter [Transatlantic] shall not be entitled to make or assert any claim against [McAllister] on account of any conditions, representations or warranties expressed or implied with respect to the [Atlantic Trader].

5

Taking into consideration the purpose of the Charter as a contract for the charter of a ship, the Court construes this clear waiver of implied warranties with respect to the Atlantic Trader as encompassing the implied warranty of seaworthiness. Accord KAI Enters., L.L.C. v. Boh Bros. Constr. Co., 731 F. Supp. 2d 568, 573 (E.D. La. 2010) (clear waiver of implied warranties relating to vessel sufficed to waive implied warranty of seaworthiness).

Transatlantic executed the Charter containing a waiver of the implied warranty of seaworthiness. Transatlantic also accepted delivery of the Atlantic Trader, at which point the waiver became effective per the terms of the Charter. Transatlantic therefore waived the implied warranty of seaworthiness McAllister otherwise would have owed it. Portus's claim for contribution from McAllister, which rests upon McAllister's breach of the warranty of seaworthiness to Transatlantic, fails as a matter of law.

## IV.   **CONCLUSION**

McAllister has come forward with evidence—most importantly, the Charter—demonstrating that Transatlantic waived the implied warranty of seaworthiness when it accepted delivery of the Atlantic Trader. Portus has presented neither facts nor argument showing that the waiver was somehow ineffective. Nor has Transatlantic responded to McAllister's assertion in the Motion that Transatlantic waived the implied warranty of seaworthiness. McAllister therefore is entitled to judgment on the issue of its potential liability to Transatlantic for providing an unseaworthy vessel. Because Portus's claim for contribution against McAllister rests upon a theory that McAllister provided the Atlantic Trader to Transatlantic in unseaworthy condition, McAllister likewise is entitled to judgment on the contribution claim. It is accordingly

**ORDERED AND ADJUDGED** that Third-Party Defendant McAllister Towing and Transportation Co. Inc.'s Motion for Final Summary Judgment [DE 50] is **GRANTED**. Summary judgment is hereby awarded in McAllister Towing and Transportation Co. Inc.'s favor on Defendant Portus Stevedoring LLC's claim against it for contribution. The Court further determines pursuant to Rule 54 of the Federal Rules of Civil Procedure that no just reason for delay exists with regard to the entry of judgment concerning the claim against McAllister Towing and Transportation Co. Inc. The Court will enter a separate final judgment accordingly.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 17th day of July, 2015.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF