UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

CASE NO. 14-60528-CIV-COHN/SELTZER

TRANSATLANTIC LINES LLC,

    Plaintiff,

v.

PORTUS STEVEDORING LLC,

    Defendant,

v.

MOBRO MARINE INC. and MCALLISTER
TOWING AND TRANSPORTATION CO. INC.,

    Third-Party Defendants.
_____/

## ORDER DENYING MOBRO'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Third-Party Defendant Mobro Marine Inc.'s Motion for Summary Judgment on Portus Stevedoring LLC's Third-Party Complaint [DE 63] ("Motion"). The Court has reviewed the Motion and the record in this case, and is otherwise advised in the premises. For the reasons discussed herein, the Court will deny the Motion.

I.    **BACKGROUND**

    Plaintiff Transatlantic Lines LLC ("Transatlantic") operates a cargo-transport service between Jacksonville, Florida, and Guantanamo Bay, Cuba. DE 1 (Complaint) ¶ 3. In early 2013, Transatlantic chartered the barge "Atlantic Trader" from Third-Party Defendant McAllister Towing and Transportation Co. Inc. ("McAllister") for use in its business. Id. ¶ 8; DE 30 (Amended Third-Party Complaint) ¶ 5. On or about March 2,

2013, Transatlantic hired Defendant Portus Stevedoring LLC ("Portus") to load and secure cargo on the barge for shipment to Cuba. Compl. ¶ 6. Third-Party Defendant Mobro Marine Inc. ("Mobro") assisted in this effort by modifying and repairing the Atlantic Trader, including parts of the barge's cargo-securing system. Am. 3d Pty. Compl. ¶ 4.

Thereafter, the Atlantic Trader departed for Cuba. By March 4, 2013, the barge had made its way from Jacksonville to waters off the coast of South Florida. Compl. ¶ 9. At this point in the voyage, the Atlantic Trader's cargo-securing system failed, and over 30 cargo containers were damaged or lost overboard. Id. In its Complaint, Transatlantic alleges that Portus's carelessness in loading and securing the cargo containers caused the cargo-securing system to fail. On this basis, Transatlantic has asserted three claims against Portus: (1) breach of contract; (2) breach of the implied warranty of workmanlike performance; and (3) negligence. Id. ¶¶ 14–27.

Portus has answered Transatlantic's Complaint and has raised a number of affirmative defenses. See DE 6. Portus also has filed third-party claims against Mobro and McAllister for contribution under Rule 14(c) of the Federal Rules of Civil Procedure. See generally Am. 3d Pty. Compl. As relevant to the motion before the Court, Portus alleges that Mobro is liable for any harms Transatlantic may have suffered, because Mobro did poor work in modifying and repairing the Atlantic Trader before the barge set sail for Cuba. Id. ¶¶ 10–13. Mobro now seeks summary judgment in its favor on Portus's contribution claim against it.

## II. LEGAL STANDARD

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that "there is an absence of evidence to support the nonmoving party's case." Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Therefore, the non-moving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576–77 (11th Cir. 1990). In deciding a summary-judgment motion, the Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006).

## III.  DISCUSSION

In the Motion, Mobro raises two principal challenges to Portus's contribution claim. Mobro contends that Portus lacks support for its contention that Mobro's personnel welded certain parts of the cargo-securing system on the Atlantic Trader, that Mobro's welds failed, or that the failure of the welds caused the collapse of the cargo

containers stacked on the barge. Mobro also suggests that Portus's failure to preserve physical evidence relating to the incident requires summary judgment for Mobro. The Court disagrees with Mobro on both points.

### A. Portus Has Adduced Sufficient Evidence that Mobro's Welds Caused the Cargo-Securing System to Fail

In its Amended Third-Party Complaint, Portus alleges that Mobro owed a duty to perform work of adequate quality when modifying the Atlantic Trader, including when welding D-rings to the barge's deck. Am. 3d Pty. Compl. ¶ 10. The D-rings anchored cargo lashings on the barge. Portus contends that Mobro's subpar welding of the D-rings caused them to fail, which in turn caused the Atlantic Trader's cargo-securing system to fail. Id. ¶¶ 10–12. Portus thus seeks contribution from Mobro for any liability to Transatlantic caused by the faulty welding.

Portus has couched the substance of its contribution claim in terms of a breach of the implied warranty of workmanlike performance. Id.; see also DE 72 at 7. The standard for liability under the warranty of workmanlike performance parallels a negligence standard. Meridian Bulk Carriers, Ltd. v. Kinder Morgan Bulk Terminals, Inc., No. 07-1422, 2009 WL 2180582 at *8–9 (M.D. Fla. July 22, 2009). In the Motion, Mobro argues that Portus cannot prove liability under this standard because of an absence of evidence regarding which D-rings Mobro welded, that Mobro's welds were substandard, or that the poor welds caused the cargo-securing system to fail. However, Portus has responded to the Motion with sufficient evidence to create a triable question of fact on each issue.

First, the evidence shows that Mobro's employees welded D-rings to the deck of the Atlantic Trader. On or about August 2, 2013, the Atlantic Trader was moored near

4

Jacksonville, being prepared for its voyage to Cuba. Personnel from Transatlantic and Portus visited the barge during this time with a number of D-rings to be welded to the deck. DE 50-5 at 30:7–31:11, 129:9–131:22. Mobro's corporate representative and one of its superintendents confirmed that Mobro's employees welded the D-rings to the deck. DE 63-4 at 23:7–14; DE 63-5 at 14:1–17:6.

Portus also has provided evidence that Mobro's welds were among those which failed. After the collapse of the cargo containers on the Atlantic Trader, it was observed that D-rings had separated from the barge's deck where they had been welded. Some of these separated D-rings had been recently painted at the weld. Mobro's invoice to Transatlantic for its work on the Atlantic Trader included charges for painting its welds. See DE 73 at 12; DE 74 at 3. The paint visible on a number of the welds that failed in the area of the cargo collapse appeared to be silver, grey, or white. See, e.g., DE 63-4 at 62:17–63:6; DE 63-5 at 29:8–12, 41:2–44:5. Mobro's corporate representative testified at his deposition that Mobro uses grey paint in its operations. DE 63-4 at 42:4–23; see also id. at 62:21–64:6. Further, Transatlantic's port coordinator testified that Mobro was the only entity that Transatlantic hired to perform welds on the Atlantic Trader in preparation for its fateful voyage. DE 50-5 at 41:9–13. This evidence is sufficient to allow the factfinder to reasonably determine that Mobro painted its welds on the Atlantic Trader grey, and that some of Mobro's painted welds were among the welds that failed.

Portus likewise has adduced support for its contention that some of Mobro's welds failed because of poor workmanship. One of Portus's expert witnesses, Frank Grate, inspected the Atlantic Trader and some of its D-ring fasteners after the incident.

His inspection revealed shoddy, substandard welding on painted fasteners that had separated from the deck at their welds. DE 63-15 at 13:24–16:24. Grate testified that the manner in which at least one such D-ring separated from the deck reflected that poor welding caused the weld to fail as it should not have. Id. at 17:20–18:6. The Court finds this testimony sufficient to create an issue for trial regarding whether the quality of Mobro's welds led to their failure.

Mobro contends that Portus has not done enough to link the D-ring welds to the failure of the broader cargo-securing system. DE 63 at 8. However, D-rings are an integral part of the cargo-securing system, used to anchor cargo lashings to the deck. See, e.g., DE 63-9 at 19:24–20:17. Transatlantic's expert witness, John Tirel, testified that in the event of an overloaded cargo-securing system, the D-rings themselves should break before their welds, and also before the lashings. DE 63-6 at 92:7–15. That some of the welds on the Atlantic Trader instead failed before other components of the cargo-securing system—that is, before the attached D-rings or lashings broke—would allow a factfinder to reasonably infer that faulty welds led to the failure of the system, and the collapse of the cargo containers.

In its Motion, Mobro further suggests that the Court should discount the testimony of Portus's welding expert, Frank Grate, as unreliable. DE 63 at 13. However, Mobro does not seek in its Motion to exclude Grate's testimony. Mobro does ask the Court in its Reply to exclude Grate's opinions and testimony, however it is inappropriate to seek affirmative relief in response to a motion, or in a reply to that response. See Silver v. Karp, No. 14-80447, 2014 WL 4248227 at *5 n.3 (S.D. Fla. Aug. 27, 2014). Moreover, Mobro's request in its July 16, 2015, Reply to exclude Grate's testimony

6

comes well after the Court's June 13, 2015, deadline for motions to exclude or limit expert testimony. See DE 45. Mobro offers no explanation for its procedurally improper and untimely request to exclude the expert testimony, thus its request to exclude is denied.

Moreover, Mobro does not appear to challenge Grate's expertise in relation to welding, to which the core of his testimony pertains. Instead, it suggests—briefly and without citation to legal or technical authority—that Grate could not have rendered a reliable expert opinion regarding the Atlantic Trader's welds based upon the materials he reviewed and the testing he performed. See DE 63 at 13–14. However, Grate conducted an in-person and photographic review of the D-ring welds on the Atlantic Trader in arriving at his opinions of the quality of the welds. It appears that a similar visual review was enough to make immediately apparent to Mobro's welding department supervisor that the quality of the welding of the painted D-rings was unacceptable. See DE 63-10 at 27:5–29:19.

In any event, because Mobro did not squarely present a request for the exclusion of Grate's testimony until its Reply, the record as developed by the parties' briefs does not provide the Court with sufficient information to resolve the admissibility of his testimony at this time. As Grate's testimony and opinions regarding the nature and quality of the welds on the Atlantic Trader remain potentially admissible at trial, the Court has considered this evidence in resolving Mobro's request for summary judgment. Accord Rhodes v. E.I. du Pont de Nemours & Co., 657 F. Supp. 2d 751, 763 (S.D. W. Va. 2009), aff'd, 636 F.3d 88 (4th Cir. 2011). Viewing all of the foregoing evidence in the light most favorable to Portus, the Court determines that triable issues of fact remain as

to whether Mobro performed faulty welds that caused the failure of the cargo-securing system on the Atlantic Trader.

### B. Alleged Spoliation Does Not Require Summary Judgment in Mobro's Favor

Mobro also argues that Portus's failure to preserve the Atlantic Trader in the condition it was in immediately after the failure of the cargo-securing system has made it difficult for Mobro to marshal evidence in its defense, and suggests that this state of affairs warrants summary judgment. DE 63 at 3–8. The Court's immediate reaction to this argument is to question the extent of control Portus had over the Atlantic Trader—a barge chartered by Transatlantic and owned by McAllister—in the aftermath of the cargo collapse. Nevertheless, Mobro cites no legal authority for the proposition that its difficulty in gathering evidence warrants summary judgment on Portus's claim for contribution.

In its Reply, Mobro elaborates that it seeks not only summary judgment against Portus for failing to preserve physical evidence, but also a variety of discovery sanctions. However, as noted above with regard to Mobro's tardy request to exclude Grate's testimony, a reply in support of a motion is an inappropriate place to first raise a request for affirmative relief. Further, a failure to preserve evidence may lead to sanctions within the Eleventh Circuit only upon a showing of bad faith. SEC v. Goble, 682 F.3d 934, 947 (11th Cir. 2012). Mobro, by its own admission, argues that Portus acted negligently, and not in bad faith. DE 74 at 6–7. Mobro therefore has not

established its entitlement to sanctions against Portus based upon a failure to preserve evidence.[1]

## IV. CONCLUSION

Issues of fact remain with regard to Mobro's responsibility for the failure of the cargo-securing system aboard the Atlantic Trader, thus Mobro has not shown that summary judgment is warranted on Portus's contribution claim. Mobro similarly has not shown that Portus's failure to preserve evidence of the condition of the Atlantic Trader after the collapse of the cargo containers provides a basis for relief. Accordingly, the Court will deny the Motion. Because the Court resolves the Motion in Portus's favor, Portus's Motion to Strike Statement of Material Facts Pursuant Local Rule 56.1 by Mobro Marine, Inc. (Doc. 66) or in the Alternative Motion for Extension of Time [DE 67] and Portus's Unopposed Motion for Leave to File Sur-Reply to Mobro's Reply to Defendant's Response in Opposition to Mobro's Motion for Summary Judgment [DE 75] will be denied as moot. It is accordingly

**ORDERED AND ADJUDGED** that Third-Party Defendant Mobro Marine Inc.'s Motion for Summary Judgment on Portus Stevedoring LLC's Third-Party Complaint [DE 63], Defendant Portus Stevedoring LLC's Motion to Strike Statement of Material Facts Pursuant Local Rule 56.1 by Mobro Marine, Inc. (Doc. 66) or in the Alternative Motion for Extension of Time [DE 67], and Portus Stevedoring LLC's Unopposed Motion

---

[1] The Court makes no determination at this time regarding the admissibility of testimony at trial going to the circumstances of Portus's alleged failure to preserve physical evidence. Accord Managed Care Solutions, Inc. v. Essent Healthcare, Inc., 736 F. Supp. 2d 1317, 1334 (S.D. Fla. 2010) (denying motion for spoliation sanctions but reserving ruling on admissibility of evidence of circumstances surrounding failure to preserve evidence).

for Leave to File Sur-Reply to Mobro's Reply to Defendant's Response in Opposition to Mobro's Motion for Summary Judgment [DE 75] are **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 28th day of July, 2015.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF